**Ranko PRIMORAC, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

No. CIV.A. 03–66(RMC).

United States District Court, District of Columbia.

Aug. 20, 2003.

Edith Margeurita Shine, United States Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Ranko Primorac, who is proceeding *pro se*, brings this lawsuit against the Central Intelligence Agency ("CIA" or "Agency") in an effort to obtain documents relating to himself that were allegedly collected by the CIA in the mid–1970s. He filed a request with the CIA for these records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on February 17, 1992. The CIA moves to dismiss the complaint based on the doctrine of *res judicata*, the expiration of the applicable statute of limitations, and Mr. Primorac's alleged failure to serve the Agency. Mr. Primorac opposes this motion. For the following reasons, the CIA's motion will be granted and the complaint dismissed.

## I. BACKGROUND

For purposes of the instant motion, there is no dispute over the relevant facts, which are taken from the complaint. Mr. Primorac was born in Metkovic, Croatia, in 1947. After graduating from high school, he joined the Yugoslavian Army and became an anti-Communist activist. In June 1974, Mr. Primorac entered Canada on a sports visa to play professional soccer. He later sought political asylum in the United States after entering this country for a "sports visit." Compl. at 6. In the early 1980s, Mr. Primorac was convicted in the United States District Court for the Southern District of New York of two counts of racketeering. He was sentenced to 40 years of incarceration. *See* Compl. at 12.

On February 17, 1992, Mr. Primorac submitted a FOIA request to the CIA for information concerning an alleged investigation of him "on or about 1974." *Id.* at 1. He believes that the CIA investigated him "in part at the request of the Yugoslavian government" and that portions of the Agency's findings were provided to the Federal Bureau of Investigation ("FBI"). *Id.* at 6. The CIA denied Mr. Primorac's FOIA request on March 17, 1992, stating that it could neither confirm nor deny the existence of responsive records.[1] "The denial was appealed under the Administrative Procedure [Act]. The CIA review board denied the appeal on August 13, 1992." *Id.* at 4.

Mr. Primorac filed suit against the CIA in the United States District Court for the Middle District of Pennsylvania on September 21, 1993. On February 23, 1994, that Court upheld the CIA's "Glomar" response on the grounds that the information sought by Mr. Primorac was classified. It dismissed the complaint. *See* Def.'s Mot. to Dismiss Ex. 1 (*Primorac v. CIA*, Civ. No. 3:CV–93–1537 (M.D. Pa. Feb. 23, 1994) ("*Primorac I*")). There is no evidence that Mr. Primorac appealed that decision.

## II. STANDARD OF REVIEW

A motion to dismiss will be denied "unless plaintiff[ ] can prove no set of facts in support of [his] claim which would entitle

---

1. This is the kind of response provided when confirmation of the existence or nonexistence of records would itself fall within a FOIA exemption. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 834 n. 9 (D.C.Cir.2001). It is colloquially called a "Glomar" response in memory of a sunken salvage ship.

[him] to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994). "[A]t this stage in the proceedings, the Court accepts as true all of the Complaint's factual allegations. Plaintiff is entitled to 'the benefit of all inferences that can be derived from the facts alleged.'" *Tripp v. DOD*, 193 F.Supp.2d 229, 234 (D.D.C.2002) (citation omitted) (quoting *Kowal*, 16 F.3d at 1276).

■ Ordinarily, if the Court considers matters outside the complaint, it will treat a motion to dismiss for failure to state a claim as a motion for summary judgment. "The court[, however,] may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment." *Baker v. Henderson*, 150 F.Supp.2d 17, 19 n.1 (D.D.C.2001).

### III. ANALYSIS

Mr. Primorac filed this lawsuit based on the CIA's refusal to produce any documents—or, at least, a *Vaughn* Index—in response to his 1992 FOIA request. The Agency moves to dismiss, arguing that this case has already been fully litigated in *Primorac I* and that the complaint is untimely *vis-a-vis* the FOIA request submitted in 1992.[2] Mr. Primorac responds that the complaint "is a continuation of [Mr. Primorac's] struggle to obtain documents from the CIA ... [but] it is not the same cause of action as the United States District Court, Middle District of Pennsylvania complaint." Pl.'s Reply to Def.'s Mot. to Dismiss at 4. He contends that this lawsuit falls within the applicable statute of limitations because it was filed within six years of when he believes the request-

ed documents were automatically declassified under Executive Order 12958.

■ Under the doctrine of *res judicata*, "a final judgment on the merits in a prior suit involving the same parties or their privies bars subsequent suits based on the same cause of action." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 946–47 (D.C.Cir.1983). "The four factors that must exist for *res judicata* to apply are (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." *Polsby v. Thompson*, 201 F.Supp.2d 45, 48 (D.D.C.2002).

Mr. Primorac asserts that a change in law since his first lawsuit—namely, Executive Order 12958—renders the doctrine of *res judicata* inapplicable to this case. He believes that Executive Order 12958, which was signed by former President Bill Clinton in 1995, authorizes the automatic declassification of the documents allegedly withheld by the CIA. According to Mr. Primorac,

> Executive Order 12958 provides that information of historical value that is more than 25 years old shall be automatically declassified, unless the release would "reveal the identity of a confidential source, or supply information about the applicability of an intelligence source or method or reveal the identity of a human intelligence source when the unauthorized disclosure of that source would clearly and demonstrably damage the national security interest[s] of the United States."

---

**2.** As stated previously, the CIA also argues for dismissal because it has not been served. Mr. Primorac, who is a federal inmate in Texas, maintains that he attempted service by certified mail, but never received a return receipt. Given the resolution of the CIA's other defenses, the Court need not resolve this issue.

Compl. at 8 (quoting Exec. Order No. 12958 § 3.4(b)). Because he could not have invoked Executive Order 12958 in his 1993 lawsuit,[3] Mr. Primorac argues that the instant complaint sets forth a different cause of action against the CIA.

Executive Order 12958 "substantially alter[ed] the process for declassifying relatively old documents, *see, e.g.,* E.O. 12958 §§ 3.3(e) & 3.6[.]" *Campbell v. Dep't of Justice,* 164 F.3d 20, 30 (D.C.Cir.1998). It (originally) provided that, "within five years from the date of this order, all classified information contained in records that (1) are more than 25 years old, and (2) have been determined to have permanent historical value ... shall be automatically declassified whether or not the records have been reviewed." Exec. Order No. 12958 § 3.4(a). On November 19, 1999, however, President Clinton extended the time period for automatic declassification until October 17, 2001. *See* Exec. Order No. 13142 § 1. This amendment also permitted another extension of the automatic declassification date until April 2003, if the affected agency received approval from the Information Security Oversight Office ("ISOO"). *See id.* The CIA attests that it received approval for an extension for automatic declassification until April 2003 for all CIA records. *See* Def.'s Reply to Pl.'s Opp. at 11 n.8. Before that deadline arrived, however, President George W. Bush further amended Executive Order 12958 to extend the automatic declassification date until December 31, 2006. *See* Exec. Order No. 13292 § 3.3(a).

■ Because section 3.3(a) of Executive Order 13292—formerly, section 3.4(a) of Executive Order 12958—will not become effective until the end of 2006, it is just as unavailable to Mr. Primorac today as it was when he filed his 1993 lawsuit against the CIA. "Automatic declassification requirements ... do not yet apply to the records [Mr. Primorac] requested." Def.'s Reply to Pl.'s Opp. at 11. His reliance on that provision, therefore, does not change the nature of the instant cause of action for *res judicata* purposes.

■ Even if *Primorac I* did not prevent Mr. Primorac from re-litigating the validity of the CIA's "Glomar" response to his 1992 FOIA request, the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) bars his complaint. *See Spannaus v. Dep't of Justice,* 824 F.2d 52, 60 (D.C.Cir.1987) (" § 2401(a) is more than an ordinary statute of limitations; it is a condition on the waiver of sovereign immunity, and we are obliged to construe such waivers strictly."). The final denial by the CIA of Mr. Primorac's 1992 FOIA request was issued on August 13, 1992, when his administrative appeal was denied. This was substantially more than six years prior to the filing of this lawsuit on January 13, 2003. For this reason, as well, the complaint will be dismissed.

A separate order accompanies this memorandum opinion.

---

**3.** As Mr. Primorac puts it, he "could not have raised Executive Order 12958 as it was passed in 1995. In addition, twenty-five (25) years had not passed from the date of the documents requested." Pl.'s Reply to Def.'s Mot. to Dismiss at 4.